## CHILS *v.* GRONLUND *et al.*

*(Circuit Court, S. D. New York. January 29, 1890.)*

1. COPYRIGHT—WHAT WILL BE PROTECTED—DICTIONARIES.

In an action for the infringement of copyright, it appeared that defendants had, in publishing a Swedish-English dictionary, taken certain words from a similar and prior publication by plaintiff, copying plaintiff's definitions, and, in the case of words of different terminations, from the same root, had omitted the root, leaving it to be understood. *Held,* that plaintiff's copyright would protect his literary work in composing the English definitions, no matter how short they were, and the mere omission of the root in words of different terminations, from the same root, would not avoid the infringement.

2. SAME—PROVINCE OF JURY.

In such case it is solely within the province of the jury to find whether the defendants had copied plaintiff's book.

3. SAME—MEASURE OF DAMAGES.

In an action for damages for the infringement of a copyright, plaintiff proved that the sale of his book had been decreased by the issuing of defendants' book to the extent of 1,600 copies. He also proved by one of the defendants that defendants had disposed of about 700 copies of their book in this country, and also proved that in another case the same defendant had stated that they had disposed of 3,000 copies of their book in this country. *Held,* that this statement of defendant could not be made available against the other defendant, a corporation, even though he was an officer of such corporation, and plaintiff was entitled to damages only for the diminution of his sales.

At Law.

Action by Otto Chils against Gustave Gronlund *et al.* for infringement of copyright and damages.

*Walter M. Rosebault,* for plaintiff.

*H. M. Gescheidt,* for defendants.

WHEELER, J. This cause has now been heard on a motion by the defendants to set aside a verdict for the plaintiff for $2,500 damages for infringement of his copyright of a Swedish-English dictionary, and for the forfeiture to him of copies of the defendants' infringing work in their possession. The principal grounds urged in support of the motion are that the verdict is contrary to the evidence, and that the damages

are excessive. The plaintiff's evidence tended to show that his book contains about 30,000 Swedish words in most common use, with short English definitions, which he composed; that the defendants' book contains about 10,000 of the same Swedish words, and a very few others, with similar English definitions, made by taking the plaintiff's book and striking out Swedish words with their definitions, slightly changing the definitions of those remaining, adding a few other Swedish words with their definitions, and printing the result, omitting the root in succeeding words, with different terminations, from the same root. The defendants' evidence tended to show that the plaintiff's dictionary was used for information merely, in connection with several other Swedish-English dictionaries, and not copied, in making the defendants' book. The jury was instructed that the defendants had a right to make and publish a dictionary, and to use the plaintiff's dictionary as a source of information, but had not any right to copy the plaintiff's arrangement and definitions, which he had composed. The jury must have found that the plaintiff's composition of English definitions accompanying the Swedish words was copied. Each Swedish word was a topic for the composition of an English definition; and the plaintiff's copyright would protect his literary work in composing them, however short they might be upon each topic. The right to protection would not depend upon the length, but upon the fact, of the literary production. 2 Kent, Comm. 381; *Callaghan* v. *Myers*, 128 U. S. 617, 9 Sup. Ct. Rep. 177. The omission of the roots of words following those in which they were printed, left them to be understood; and they were represented by the space, in connection with the terminations, as fully as if there, in making out the words. The evidence was ample, if credited against that of the defendants, to warrant and support the finding that the plaintiff's copyrighted literary work had been appropriated by the defendants to their use. The giving of credit to the evidence was solely within the province of the jury.

The plaintiff testified that he published his book in the fall of 1888, and sold 350 copies per month till the defendants' book came out, in April, 1889, and after that 150 copies per month; in all, about 900 at retail, at a profit of 87 cents each, and 1,600 or 1,700 at wholesale, at a profit of 55 cents each. On this evidence he might have lost the sale of 200 copies per month for 8 months from the time when the defendants' book came out to the time of the verdict, December 4, 1889, in all 1,600 copies, on which his profits might have been $1,064.32. He called the defendant Gronlund as a witness, who testified that the defendants procured 25,000 copies of their book to be printed, of which 18,200 or 18,300 were delivered, and the rest spoiled in binding; that, of those delivered, 16,000 were on hand, in the possession of the defendants; 1,500 were sent out of this country, to Sweden; and the remainder were sold at a small price, or given away. The plaintiff also introduced a statement of Gronlund, in an answer, that 14,000 copies were on hand. The printer testified that he delivered to the defendants 18,875 copies. The statement of Gronlund would be evidence against him that the defendants

had but 14,000 copies on hand, and that the balance of those received from the printer had been disposed of. This would tend to show that 4,875 copies in all had been disposed of, and 3,375 of them in this country, which might displace sales of the plaintiff's book to that extent, on which his profits might have been $2,116.25. But this statement of Gronlund would not be evidence against the other defendant, a corporation, that the fact was as stated, although he was an officer of the corporation, and might act for it in some respects. It might tend to impeach his credibility as to what he had testified to in this case, but that would not furnish evidence of facts of which there was no other proof. Without this statement, there was no evidence that more than 2,875 copies had been disposed of out of the possession of the defendants, or that more than 1,375 had been disposed of in this country, aside from the evidence of diminution of the plaintiff's sales on the appearance of the defendants' book. The defendants cannot be holden together for more than is proved against both; and there is no competent evidence against both of any greater damage than that of $1,064.32 from the diminution of sales.

This suit was commenced July 17, 1889; and the plaintiff is not entitled to recover for anything done by the defendants since that time. They stopped, or claim that they did, at that time; but the books which they had disposed of previously may have affected the plaintiff's sales afterwards, and down to the time of the verdict. While the verdict is clearly right in being for the plaintiff, it is as clearly excessive for all the damages found by it above $1,064.32. That is the uttermost to which the defendants can, on the proofs submitted, be justly together held. As the jury have found more than this, without being led by any error made apparent, they have found this; and the plaintiff may cure the verdict of the excess by remitting it, if he chooses to do so. If the plaintiff, within 10 days, files a *remittitur* of all damages beyond $1,064.32, let the motion be thereupon overruled, and the stay be vacated. If he omits so to do, let the verdict and judgment thereon be set aside.